My name is Bruce Graham. I represent the appellant in this matter of Fireman's Fund, and to try to help clarify the record, Fireman's Fund as the error and emission carrier for the insurance broker Skinner is one and the same. That is, if you read Skinner, read Fireman's Fund. And likewise, for the material parts of this litigation, when you read, that is, at least since 1989, when the settlement of the personal injury actions resulted in the assignment of the causes of action to Mr. Sayre, when you read Dial, when you read Carson, you read Mr. Sayre, because he acquired the right to maintain the action in the names of those entities against Skinner. I also want to clarify the appellant's position on the standard of review here, and that is that our position is that the trial court's review or interpretation of 60b-4 is a legal question which is subject to de novo review. However, the trial court's determination on the factual issue of whether or not the motions were brought within a reasonable time, that is subject to review or reversal only and upon the showing of clear error. Of course, we agree with the trial court determination that the underlying motion to – for vacating the judgment brought in September of 2003 was not brought within a reasonable time. The requirement of a time limitation here, our position on that issue, is just based on a plain reading of the rule, and it says that such motions must be brought within a reasonable time on the prior precedent of this Court in Ray Lovett, among other cases, as well as the common-sense need for finality in judgments. When you are reviewing the record in this matter, I would suggest to you an alternative test for evaluating the arguments of Mr. Sayre, the could-a, should-a, would-a test, and that is, could he have brought these arguments sooner than September of 2003? Should he have brought these arguments sooner than September of 2003? And what's the consequence of his failure to do so? When you hear the argument that the judge's 1999 decision to vacate the judgment as to National Union and Carson, the question is, could he have brought that motion sooner than September 2003? He certainly could have brought it in 1999 when the ruling was made. Should he have brought it at that time? Of course. And the fact that he didn't bring it at that time allows for the reasonable inference that it lacked merit, and it lacked merit for the plain and simple fact that the reason why Carson and the reason why National Union were allowed to skate away from this judgment is because the notice to Mr. Sayre could not be imputed to Carson, could not be imputed to National Union. So using that ruling today to try to justify reversing or vacating the judgment as to Mr. Sayre is a logical somersault of Olympian proportions. When you hear the argument of Mr. Sayre about how it is that his due process rights in this matter were denied, and that is, he didn't know that he could be personally liable for the attorney fees or the costs incurred in the litigation, ask, when could those arguments have been brought? Could they have been brought sooner than September 2003? And clearly, they should have been back in 1993 when the judgment was entered. Kennedy. But let me ask the question. He appealed back in 1991. In May of 1993, the court of appeals said he was not he had no standing. He wasn't an aggrieved party. What was he to do at that point? Well, his remedy would have been to, if he was going to claim that his due process rights were denied, would be to raise this argument at that time, and that is, is that he would have argued that I shouldn't be held liable here for these costs and fees back in 1993 when the record is complete, memories are fresh, and the people who were still involved in this matter could talk about what happened instead of waiting a decade before raising the issue. But if you go back to that original judgment and the facts giving rise to that original judgment, Mr. Sayre was not a named party to that litigation. Isn't that correct? The name that he used to bring the action was Dial Corporation. But he acquired that right by way of the assignment. But he was, in fact, the real party in interest. But at the time the issue of attorney fees came up, it was late in the day. It was what, trial brief, as I recall. It was raised at trial only. Hadn't been any notice up to that point. Mr. Sayre was no longer in the lawsuit. The law firm had essentially disbanded, as I've understood from what I can read. I know not what happened. It's not definite in the record. But one of his former partners now is in, carrying the ball, so to speak. He's not a party, not a named party. Never has been given notice of any kind other than through his former partner. And isn't there a serious question about this judgment against him at that point and the Court's ability to go forward? Well, first of all, the trial brief that raises the issue about responsibility for attorney fees was served personally on, directly on, Mr. Sayre while he was still consul of record. And the fact that Mr. Sayre thereafter delegates responsibility for the handling of these assigned claims to his partner or former partner is of no significance at all, because knowledge to Mr. Boucher is also knowledge to Mr. Sayre, because he remains as the, the real party in interest here. The assignment that he acquired from Carson and Dial in the 1989 settlement carries with it both the benefits and also the obligations of that settlement. And unless he carves out a limited liability, a limited personal responsibility for that, he remains personally responsible for that. This is why you see in the record Mr., Mr. Sayre has been protesting his personal responsibility for this and losing. Let me ask another question. Carson, in this case, essentially had no claims against Dial when this litigation arose. And as I understand the ruling, now this is very convoluted, and I want to confess to you that I had to read these materials three and four times, and I, I was starting to believe that my wife was correct, that I'm not educable, only trainable, because I couldn't understand what had gone on. But if I went back and looked at these materials, it looked to me like, um, Carson had never made any claims against Dial. In order to have an attorney fee award of any kind, it had to depend upon actions under the California code that were taken by Carson. And therefore any liability of Sayre was derivative. And ultimately it was determined in this litigation, as I understand it at least, that when Carson got out and, and everybody else got out, essentially there was no basis to go after Sayre. Now, am I wrong or am I right, or am I just misstating everything? I think what, what you're doing here is you're finding questions of the application of law and whether or not what was going on at the trial court level were proper applications of the corporation code and those related positions. Those do not raise to the dignity of a declaring a judgment void under 60B4. Well, let me go one step further on appeal. When this matter was appealed back in 1993 or when the order came out, the appeal, I think dated substantially before that, there was a one state, one, one page order that came from the court that disallowed fees on appeal. Ultimately thereafter, as I understand it, Mr. Sayre had a $10,000 or $11,000 judgment entered against him based on a default taken at the district court level. And I believe those fees were based upon fees that were incurred on appeal. What can you tell me about that? I believe that the fees that we're talking about were fees that were awarded pursuant to a motion filed by the Skinner attorneys. I'm understanding your question correctly. And that was a motion that was brought, well, unopposed motion was in 1993. That was the last one that established the amount of attorney fees. But that had to do with the fees on appeal, did it not? Yeah, it may have. It may have included the fees on appeal. I don't know. How do we get fees on appeal? By default, when the court order from the Ninth Circuit says you're not allowed your fees. I'm sorry. When the court order from the Ninth Circuit said that the parties will not be allowed their fees on appeal. But, Your Honor, you have the better of me on that. Let me review the record on that and respond because I didn't anticipate that issue. But again, I think as long as we're talking about that, why is any, what is the basis for anyone being entitled to attorney's fees under the American rule? Well, it allows them to be compensated for the costs of litigation. Well, yeah, the costs, I understand. But attorney's fees usually has to be either on the basis of a statutory basis or a contractual basis. And I'm having difficulty seeing why anybody's entitled to fees. The argument in this case was predicated on interpretation of California Corporation Code Section 317. We can argue or disagree about whether or not that was a proper application, but that would only be error of law, which would not be sufficient to sustain a motion to vacate under this rule. Well, maybe I'm not making myself clear. I, in a normal lawsuit, the parties are not entitled to attorney's fees if they, even if they win. Why is this different? The Corporation Code Section entitles corporate officers and directors reimbursement for certain fees and expenses that were incurred. So under that rationale, the claim was made that Skinner is entitled to reimbursement from Carson's assignee, that is, Mr. Sayre, for its expenses in the litigation because Carson was its agent. We can say that's twisted logic. We disagree with that. The point is, is that it would be a misapplication of law, but it wouldn't give rise to a motion for relief under 660b-4. It's just not the kind of error that can be considered at this late date. Would you agree, however, that under any state of circumstances, Mr. Sayre back in 1993 clearly was aggrieved? I have difficulty understanding what this Court said in 1993 when it returned the judgment indicating that he did not have standing to maintain the appeal. I admit that I have issues with that. It's not entirely clear to me. But I think that it doesn't change anything today, because the fact remains that we're still arguing things that should have been resolved a decade ago, back then. If we had a need for clarification from the Court at that time, what was meant by that, then was the time to do it, not today. The judge at the trial court level in this case essentially found a due process violation. Mr. Sayre was not a named party. Mr. Sayre did not have legal notice. Now, I understand you're arguing that he had practical notice, and in the real world, he had notice. What's the standard of review in this Court for those findings? Aren't those factual findings that have been made by the judge that are supported by substantial evidence? Yes, but bearing in mind that as the assignee, Mr. Sayre doesn't have to be named individually to be the real party in interest. That is, when he acquires the rights of assignment, he acquires the right of Dyle Corporation to maintain that action. And, of course, when he maintains the action against Skinner, he's maintaining that action through the rights assigned to him through Carson, the client of Skinner. Well, but I'm sorry for interrupting. I'm sorry. He acquires those rights. The only way he could maintain the action against Skinner is by virtue of the assignments. Well, he also had the assignment from Dyle. Dyle was the company that basically wasn't insured. So the assignment that was prosecuted, as I understand the record, was the assignment from Dyle. Dyle was the initially the aggrieved party that was supposed to have been insured under a declaration of insurance. The chlorine gas came out. A bunch of people were injured, and there was a big settlement. Dyle had the real claim against Skinner. Dyle, and it was Dyle's interests that were being prosecuted by Mr. Sayre. And Carson, although Carson, you're correct, had assigned its rights, as I understand the record, there were no cross claims of any kind filed against Carson and no claims filed by Carson against Skinner. Or at least they were not prosecuted at that point. And the only way that attorney fees can be awarded, as I understand the record, in favor of Skinner, would be based upon having to defend against Carson. Well, first of all, the position of Dyle here as the aggrieved party is the party who has the damages. Their contract was with Carson. Carson is the firm that had the contract with Skinner. There's no direct contractual relationship between Skinner and Dyle. Correct. Consequently, in order for the action to be maintained against Skinner to have any validity at all, necessarily Mr. Sayre had to link the claims of Dyle vis-a-vis the claims that it had against Carson, and then Carson's claims against Skinner. It requires all three of those for him to maintain the action. And the argument was, below, was that Skinner is entitled to the reimbursement of its attorney fees because these rights were coming against it via its agent, even though its agent was not technically a party to the action. In fact, they were dismissed. But they still had the real enforcing the rights by virtue of the assignments. So, again, we can go crazy trying to figure out why it is that things were done, how it was that these laws were applied back then. And we may say, yes, today it doesn't look like it was fair and the right thing to do, but the problem is, is that you – it's over a decade since this stuff has gone on. And I ask you to bear in mind that when we're talking about due process, fundamental fairness here, yes, we need to talk about notice and opportunity to respond and judicial review, all of which Mr. Sayre has been engaged in over the past decade on this case. But none of that has any meaning at all unless there's finality to the decision. Those – everything in the proceeding just becomes a transitory view which can be upset later on if we decide to redo everything. Thank you. Thank you. Good morning, Your Honors. Federico Sayre, appearing in proprio persona. Let's talk about fundamental fairness. Sometimes I feel like I'm on the outside of a window and I can't get in in the course of this proceeding. Originally, there was a lawsuit in which I represented a number of primary school children because of a chlorine gas leak. In settling with Dial, they assigned me the rights to a lawsuit that only Dial – only Dial ever filed against Skinner. In settling with Carson, the company, the subcontractor that actually broke the pipe, they also assigned – Let me stop you there. What claim did Dial have against Skinner? Dial alleged that Skinner did not purchase – or they – Skinner's a broker. So Skinner went out and bought an insurance policy for Carson, which was required in order to do the subcontracting job. Dial said, you should have made us an additional name insured so we didn't have to go into our own insurance policy to pay for the defense and ultimately the indemnification. What would be the basis for it? Dial didn't have any contractual relationship with Skinner. No, but they had a contractual relationship with Carson. Yeah. And they were suing Carson and suing Skinner for good measure. Yeah, it's a good measure that I don't see what their cause of action was. They just threw it in. Okay. And they assigned it not to me, but to my clients. I was the trust – I didn't get anything out – well, I would get attorney's fees if I were successful. Okay. But it wasn't to me. I held it as a trustee for my clients, the children. The next thing that happens is we never filed the assignment of Carson's rights against – in a lawsuit against Skinner. It never was done. So you could not trigger Corporations Code 317. Only if Carson had filed a lawsuit or their rights had been filed in the form of a lawsuit could it be perceived against. Where counsel says you needed them all together, that's simply false. You only needed – if you're going to pursue the case, you only needed the assignment of the rights against Dial. Now, when my law firm broke apart, Mr. Boucher took that case with him. I didn't think it was a particularly good case, and I was out of it. He proceeded to represent them. I was never a party to that lawsuit, ever. Did you sue Skinner? No. I never did. Who sued Skinner? Dial did. Only Dial. Only Dial. Only Dial. I never sued him. I assumed the lawsuit, in fairness. I assumed the lawsuit, which had been filed by Dial, but shortly thereafter was given to Mr. Boucher, and he pursued it with that to trial. At that time, I was not – not only was I not a party to the lawsuit, but I wasn't even in communication with Mr. Boucher because of the breakup of our firm. He didn't talk to me. I didn't talk to him. And I didn't know anything about what was going on until after a judgment by Judge Gabboy was rendered against me. So what did I do? I took it up on appeal. This can't be. I wasn't even a party. And the court found, you're right, you're not – you weren't a party, so you're not aggrieved. And essentially I said, well, I don't have to worry about it. Then commences this odyssey of about 14 or 15 years of the destruction of my credit. And that's basically what Fireman's Fund has done during the course of this time. What happens next is in 1999, and I think this is an important milestone, on November the 12th of 1999, Judge Baird, seeing the manifest injustice of all this, basically vacates the summary judgment which said that Skinner had been an agent of Carson. And then specifically says, also vacated all other rulings that made an agency determination between Skinner and Carson or rely on such a determination. So any possible case against me had its legs cut out from under it. This is like Mad Hatter, because the Ninth Circuit says I'm not an aggrieved party. Justice Baird in 1999 says there's no basis for it. There's no – she vacates the judgment. That's not been appealed. That's not contested. Respectfully, that's res judicata on this court. And if this court were to send it back, where counsel might want to try to restore it to the civil active list, I think it's law of the case with regard to that judge. There's no basis. The only way it could have – if attorney's fees could have been awarded in the American system, is if there was this corporation code under the facts of this case, is if this corporation code section applied. And that had to apply between Carson, who was never a party to the lawsuit, and Skinner, and who the Justice Baird in 1999 severed and said there was no agency. In fact, you'd actually settled the Carson-Dial debate had been settled, but the party had – the proper papers had not been filed to totally get Carson out of the federal lawsuit. It was all over. And at that point, I thought, well, I'm out of here, because they also brought a motion at that point, after having brought me down to another federal district court to try to have a judgment better examined me, which I refused to answer, saying, look, I'm the trustee for some kids. I'm not the person that has the benefit of this thing. And they went ahead and brought a motion to find that I was individually responsible, and Justice Baird denied it in 1999. But in fairness, wasn't that on a technicality? Well, technicality, and she said, on what basis? I mean, she said, give me a basis. I've just ruled 317 couldn't apply implicitly. So what's your basis? I don't think it was legal technicality at all. I think it was substantial justice that there was no basis. They just said, well, let's just go ahead and throw it on the board, because we're powerful. We can crush this guy, and he'll give up at some point. Let me ask you, originally there was $152,000 that was attached. What happened with that? Well, they got some money, and there's still a judgment out there for I don't know how much more now. Well, fortunately, because of the second ruling by Justice Baird, or Judge Baird vacating this matter, I assume that the interest must have stopped at that point, because she's effectively vacated the judgment. So I don't know what the number is. It was just all funny money. It just kept going up, and they hit my banks, and I can't begin to tell you what kind of agony it's gone through with my family, my children, and they're just kind of constantly at me. And counsel says, well, it may have been all unjust, but you've got to fulfill all this somehow. Well, that, I think, is what the essence of 60B-6 is, 60B-5, avoid judgment. I mean, you have the final say. It's like a civil habeas corpus. You have the final say to deliver me. Could I stand it? Look, I'm important to my wife, to my kids, to my parish. I'm important to my clients. But in the sum of things, I'm a very insignificant little lawyer. But B-5 and B-6 have a reasonable time. Don't they have a two-year limitation? Well, I kept filing everything I could. I had a Ninth Circuit in my favor. I had Justice Baird's ruling in 1999 that implicitly voided the judgment against me, because she says, and on any ruling that relies on such a determination, such a determination being an agency between Skinner and Carson. It was all voided by that ruling. But it's been constant. And so now what we've come down to is counsel says, no, you do injustice. Because it's too late. 1991, the appeal was not too late. They found that I wasn't a party. 1999, they haven't contested that that 60B motion was too late. And that stands alone. Res judicata. Why did the additional fees get awarded on appeal? And I'm making that assumption from what I can read. And as I understand it, those were awarded by default. Were you given notice of those? I was not given any notice. I've not been, I haven't been, I've been on the, looking through the glass, trying to see how to get inside the room. And I'm not given notice. I was not given notice. Then counsel says I was served with some issue in the case of which I was not a party to. He made that representation in his opening brief. And in the opposition, we pointed out that the proof of service doesn't show that. He didn't reply to that. But now he says this falsehood again. I was not served. When you took the assignment, was it, did you take it on behalf, being a trustee, on behalf of your clients? The children. Yeah. The children. It was not my case. I didn't, it wasn't my interest. It was an assignment of their rights to my children as a part of the package of the settlement. Yes, if I had pursued it successfully, I could have gotten a percentage of it. But it was not my money. I was simply a trustee. I really don't have anything more. I think that respectfully, this Justice Barrett's ruling in 1999 is either res judicata or, as I said, if it's, if this is not a final determination, if there's still a case down there, then I don't know that you should have the jurisdiction to decide this, because there's no BIN 054B certification. It should go back down, and then it should be, maybe they can try to restore it to the civil active list, of which I was never a party. But they can try, and I can bring the motion that shows that it should be law of the case or res judicata. I'm just asking you to do it justicefully. Thank you, sir. All right. Thank you. Thank you. Ultimately, the motion needs to be denied because of the plain fact that these issues do not raise to the level of a failure of due process. We're talking about questions about whether or not the attorney fees were properly awarded or not, whether it was a proper application of the corporation code under the parties in the situation that had been existed. This is not the due process. But if you find some basis here to find due process. Well, I guess the base really is lack of notice. Well, it's hard to reconcile why it is that he's being asked to answer Debra questions in 1997, and yet it's another six years before the motion is filed. And that is the time limitation here of a reasonable time for the filing of these motions necessarily assumes that there are going to be motions like this that have some merit, some arguable basis to them. But we have to cut them out. We simply have to recognize that it's an imperfect system, that there will be mistakes made, but parties require finalization to carry on their affairs. But I remember the old rule in law school about void and vague void, void ab initio. Is that the word? Void from the day it was entered? If this was void, wasn't it void then? I mean, one of the issues that comes up, he was not aggrieved in 2003. That's what the Court of Appeal said. He didn't have any right of appeal. At this point, could they not have assumed that since he wasn't a party and didn't have notice, he's not before them? And therefore, there — could the Court not have simply treated him as a non-party and in essence had no interest in the lawsuit despite the order of the Court? Well, of course, Mr. Sayre is a party and was a party and always was a party, notwithstanding the fact that he also owed obligations to his clients in what he would do with any benefits that he acquired as a result of the prosecution of the action. But Mr. Sayre was driving that bus. Mr. Sayre was the one in charge. But he was the trustee, was he not? You know, we're not privy to exactly what his relationship is with his clients, what that legal services agreement says. It's really none of our concern. But the fact is, is that if he does owe obligations to his clients, as he should When he got the assignment, was it on behalf of himself as trustee for the children? Yes, that is so. Well, then doesn't that mean that it's — he is a trustee for the children and could bring this suit that ultimately Skinner won, but it seems like the claim would be against the trustee for the children. And is that what you're — are you seeking to obtain the attorney's fees and costs against the children? No. Clearly against Mr. Sayre, because — As an individual? Because Mr. Sayre acquired both the rights and the duties with the assignment. Well, as a trustee, though, didn't he? Well, the duty of a trustee is to provide benefits to the beneficiaries. Right. Not to saddle them with liabilities. Consequently, it would render this whole transaction totally illusory to say that Mr. Sayre doesn't have personal responsibility here. Well, I'm — I don't know. I'm having a hard time with that. If the assignment as a part of the settlement was to Mr. Sayre as trustee for the children so that the suit could be brought against Skinner, then it seems to me it's — it's Sayre as trustee that's involved in this situation. Let me also ask this question as a supplement, and I don't mean in any way to — No, go ahead. In effect, late in the day, so to speak, you moved to have him determined to be individually liable, and that motion, as I understand it, was denied, although for technical reasons. On the other hand, you never went back in and tried it again. So doesn't that sort of speak fairly loudly on that issue of personal liability? Well, you'll find also evidence that Mr. Sayre was trying to get determinations from the trial court that he wasn't personally responsible for, and those, too, were denied for technical reasons. So I can't point to you a place in the record here where we have a trial court determination that Mr. Sayre is, in fact, personally liable. All I can say is that it would render this judgment illusory if he's not. There would be nothing there. There would be no meaningful cost toward it all. On another — Go ahead. No, I deferred. No, I was going to say this is an extremely complicated matter, and I was going to say your time was up, but you have a question. My question is on a different topic. Mr. Sayre says, I think, at the end of his argument, that this matter is not appealable, that somehow it goes back to the court. It's my impression that your position is just the contrary, that clearly this is an appealable matter and this is clearly in front of us. Yes. Thank you very much. All right. Thank you.
judges: Hug, Wardlaw, Suko